# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: CHARLES ATWOOD FLANAGAN, Debtor. | |
| TITAN REAL ESTATE VENTURES, LLC, Appellant, <br><br> v. <br><br> MJCC REALTY LIMITED PARTNERSHIP, Appellee. | CIVIL ACTION NOs. 3:06cv1472 (SRU) 3:07cv1379 (SRU) |
| BONNIE MANGAN, as trustee of the bankruptcy estate of Charles Flanagan, Appellant, <br><br> v. <br><br> MJCC REALTY LIMITED PARTNERSHIP and MJCC CORPORATION, Appellees. | CIVIL ACTION NO. 3:06cv1473 (SRU) |

## MEMORANDUM OF DECISION

Appellant Titan Real Estate Ventures, LLC ("Titan") appeals from the United States

Bankruptcy Court's decisions: (1) denying its applications for prejudgment remedies against

Steve and Amy Sullivan (collectively, the "Sullivans") and MJCC Realty Limited Partnership

("MJCC"), *In re Flanagan ("Flanagan I")*, 348 B.R. 81 (Bankr. D. Conn. 2006); and (2)

granting MJCC's motion for summary judgment on the remaining counts of Titan's Second

Amended Complaint dated March 18, 2005.  *In re Flanagan ("Flanagan II")*, 373 B.R. 216

(Bankr. D. Conn. 2007).  In the complaint, Titan asserted claims for legal title to, and/or the sale

proceeds derived from, property formerly held by MJCC.  United States Bankruptcy Judge Albert

S. Dabrowski concluded, principally, that Titan failed to demonstrate that it had a viable claim to

MJCC's properties.

Appellant Bonnie Mangan, trustee (the "Trustee") of the bankruptcy estate of Charles Atwood Flanagan (the "debtor"), appeals from the Bankruptcy Court's decision denying her motion for contempt against MJCC Realty Limited Partnership and MJCC Corporation (collectively, "MJCC") for the willful violation of the automatic stay provisions of 11 U.S.C. § 363(a)(3). The Trustee alleges that MJCC willfully took possession of, exercised control over, and sold property that the estate had interest in without notice to, or permission from, the Bankruptcy Court. Judge Dabrowski denied the Trustee's motion as time-barred under the applicable statute of limitations, ruling that the estate had lost its opportunity to pursue its interest in MJCC and its property holdings after it failed to pursue its claim within one year after Mangan was appointed Trustee.

The issue presented by these bankruptcy appeals is whether a trustee can successfully act on a debtor's equitable interest in property to bring that property into the estate when the circumstances are such that an equitable interest arose only because the debtor was acting to shield his assets from creditors.

According to the Bankruptcy Court, any claim brought by the debtor to act on his equitable interest under those circumstances would fail due to the *in pari delicto* doctrine, which "provides that actions brought on illegal or corrupt bargains cannot prevail if the plaintiff is *in pari delicto*, *i.e.*, where he has been a significant participant in the subject wrongdoing, bearing at least equal responsibility for the violations he seeks to redress." *Flanagan II*, 373 B.R. at 224.

Because the undisputed facts show that the debtor would only have had an equitable interest in the subject property if he had been acting to evade creditors, I agree with the

Bankruptcy Court that, had the debtor sought to assert his equitable interest against the property's legal title-holders, a court sitting in equity would have refused to aid him as a party to an illicit transaction.  Because the trustee, when acting on the debtor's rights and interests pursuant to 11 U.S.C. § 541, is subject to the same legal and equitable obstacles that the debtor would face, I hold that the *in pari delicto* doctrine prevents the trustee from successfully recovering the debtor's equitable interest on behalf of the estate, where the circumstances necessarily demonstrate that the equitable interest arose only because debtor fraudulently sheltered assets from creditors.

Therefore, because its interests in and rights to the subject property are derivative of the Trustee's, Titan has no claim against MJCC under section 541.  Furthermore, any claim made pursuant to the Trustee's strong arm powers under 11 U.S.C. § 544 is barred by the statute of limitations.  Because neither Titan nor the Trustee has a viable claim against MJCC, the decisions of the Bankruptcy Court are affirmed.

## I.      Factual Background

The facts relevant to the present appeal are not in serious dispute.  The underlying bankruptcy proceedings were initiated on February 17, 1999 when the debtor, Charles Atwood Flanagan, filed a voluntary petition under Chapter 11.  One of his primary creditors was the Cadle Company and/or D.A.N. Joint Venture (collectively, "Cadle").  At the time of his filing for bankruptcy, Flanagan failed to disclose any interest, equitable or otherwise, in MJCC, which held title to two pieces of real property in Connecticut.  It is those two properties that are the focal point of these appeals.

In 1994 and 1995, MJCC purchased two pieces of residential property: 25 Queach Road,

Branford, Connecticut (the "Branford Property"), and 230 Millbrook Road, North Haven, Connecticut (the "North Haven Property"). Flanagan funded MJCC's purchase of those properties, though he never took a legal interest in the properties or in MJCC. Instead, Flanagan's mother-in-law, Angela Cimino-Burr, held a 95% interest in MJCC and Flanagan's sister, Sharon Rosen, held the remaining 5% interest. Neither Cimino-Burr nor Rosen ever took an active role in the management and control of MJCC. Cimino-Burr was essentially a figurehead general partner, allowing Flanagan to completely control MJCC and direct the management of its properties as its officially designated agent. Flanagan resided at the North Haven Property and his uncle, William Nygard, resided at the Branford Property.

When Flanagan filed for Chapter 11, he listed the North Haven Property as his mailing address, but did not mention any interest in MJCC in his petition, schedules, or statement of financial affairs. Flanagan's creditors, specifically Cadle, suspected he was secreting assets. Cadle made Flanagan's attorney aware of those suspicions and attempted to get the official Unsecured Creditors' Committee (the "Committee") to undertake a fraudulent conveyance action to recover MJCC and its Properties. Despite those suspicions, neither the Committee nor Flanagan, as debtor-in-possession, ever brought an action to bring MJCC and/or its assets into the bankruptcy estate during the pendency of the Chapter 11 case.

Flanagan's Chapter 11 case was converted to a Chapter 7 bankruptcy on January 16, 2003. Bonnie Mangan was appointed trustee of the bankruptcy estate. The Trustee became aware of the Branford and North Haven Properties early on in her tenure as trustee, yet she never initiated an adversary proceeding to bring MJCC and/or its Properties into the Flanagan bankruptcy estate. Her only action with respect to those properties was to file two Affidavits of

Facts Relating to Title or Interest in Real Estate on May 23, 2003 relating to the Branford Property and North Haven Property, which stated that title to those properties, held by MJCC, may be affected by the Chapter 7 proceedings.

During the pendency of Flanagan's Chapter 11 case, Cadle came to suspect that several of Flanagan's associates were conspiring with Flanagan to conceal assets.  On April 4, 2001, Cadle filed a civil RICO action in the United States District Court for the District of Connecticut against thirteen defendants, including Cimino-Burr.  On or about January 19, 2003, Cadle agreed to settle its claims against Cimino-Burr in exchange for her interest in MJCC.  Pursuant to the terms of the settlement dated January 21, 2003, Cimino-Burr assigned her 95% interest in MJCC to Cadle in consideration for a release from the RICO action.

On July 8, 2003, the Trustee filed a Notice of Intent to Sell the bankruptcy estate's interest in MJCC and its assets to Cadle for $10,000.  That sale never took place.  Instead, approximately one year later, on June 17, 2004, the Trustee filed another Notice of Intent to Sell the estate's interest in MJCC and its assets to Titan for $15,000.  On August 4, 2004, the Trustee transferred the estate's interest in MJCC and its properties to Titan for $15,000 plus 2.5% of any net recovery that Titan receives as a direct result of its purchase of the estate's rights and interests.  Titan is held solely by Stanley Pyrmas, Flanagan's former business partner and another civil RICO defendant.

In the meantime, on March 5, 2004, MJCC (now controlled by Cadle) sold the North Haven property to the Sullivans for $485,000.  On December 30, 2004, the Trustee filed the motion for contempt against MJCC for its willful violation of the automatic stay order that governs the Flanagan bankruptcy estate.  In that motion, the Trustee sought a declaratory

judgment that the Branford and North Haven properties and/or their proceeds were rightfully the property of the estate.

## III.    **Bankruptcy Court Rulings**

After a two-day evidentiary hearing in August 2005, Judge Dabrowski denied Titan's applications for prejudgment remedies and the Trustee's motion for contempt.  On August 9, 2007, Judge Dabrowski granted MJCC's motion for summary judgment.  Those decisions rely on the same legal reasoning, which is why the three appeals are addressed in a single decision.

A.    Ruling on MJCC's Motion for Summary Judgment

Judge Dabrowski noted at the outset that Titan's claims to the MJCC assets were "wholly derivative" of the Trustee's rights to those assets by virtue of the August 2004 transfer of interests from the Trustee to Titan.  *Flanagan II*, 373 B.R. at 222.  Judge Dabrowski thus concluded that "Titan can prevail on its Claims only if, and to the extent that, the Trustee would have prevailed on identical claims at a point in time immediately prior to her assignment of rights and interests to Titan."  *Id.*  Noting that bankruptcy trustees derive their powers from the United States Bankruptcy Code, Judge Dabrowski then proceeded to analyze the viability of Titan's claims "through the prism of available statutory sources of trustee authority."  *Id.*

Starting with 11 U.S.C. § 541(a)(1), which provides that the property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" and which carries no statute of limitations, Judge Dabrowski held that the *in pari delicto* doctrine would have prevented the Trustee from recovering the MJCC assets under that section of the Bankruptcy Code.  According to Judge Dabrowski, therefore, all of Titan's claims to MJCC's assets advanced under section 541(a) – the alter ego claim, conversion claims, unjust

-6–

enrichment claims, and constructive trust claims – failed.

Analyzing Titan's alter ego claim first, Judge Dabrowski explained that, in order for the Trustee to have a right to bring an alter ego claim under section 541, *Flanagan*, as the debtor, must have been able to bring a claim to pierce his own veil. *Flanagan II*, 373 B.R. at 223-24. Noting that the alter ego claim was better described as a "reverse piercing" claim, Judge Dabrowski concluded that Connecticut law would not have permitted Flanagan to pierce his own veil to recover the MJCC assets on behalf of himself because MJCC's ownership of those properties was the result of an unlawful venture to shield Flanagan's assets from creditors. *Id.* at 225. Specifically, the *in pari delicto* doctrine, which prohibits wrongdoers from evading responsibility for their own corrupt bargains by leaving the parties where it finds them, would have prohibited Flanagan from recovering MJCC assets for himself. *Id.* Judge Dabrowski concluded that, because Connecticut law would have prevented Flanagan from recovering the properties himself, the Trustee and Titan were necessarily similarly prevented from recovering those assets under section 541. *Id.* at 226.

Judge Dabrowski concluded that the same logic applied to Titan's conversion, unjust enrichment, and constructive trust claims. Because the *in pari delicto* doctrine would have barred Flanagan, in the first instance, from pursuing those equitable remedies to recover the properties from MJCC, the Trustee and Titan were similarly barred.

Addressing Titan's turnover claims brought pursuant to 11 U.S.C. § 542(a), Judge Dabrowski concluded that such claims could not be brought under section 541(a)(1) "because, as claims only arising in favor of a trustee on the Petition Date, they could not have been owned by Flanagan immediately prior to the commencement of his bankruptcy case." *Id.* at 229.

Moving on to 11 U.S.C. § 544(a), Judge Dabrowski noted that Titan apparently had

withdrawn any reliance on section 544 as a statutory basis upon which to assert its claims.  *Id.*

Nevertheless, Judge Dabrowski discussed the viability of Titan's claims under section 544

because, by endowing the Trustee with the powers of certain hypothetical creditors, it was "the

most natural basis" for several of those claims.  *Id.*  Judge Dabrowski noted that the alter ego and

constructive trust claims were the types of claims that creditors might pursue under Connecticut

law.  *Id.*

Importantly, however, Judge Dabrowski concluded that the statute of limitations barred

any section 544 claims.  Under 11 U.S.C. § 546(a)(1)(B), the Trustee had to bring claims

pursuant to section 544 within a one-year period from the date the Trustee was first appointed or

elected, which occurred in January 2003.  Judge Dabrowski held that all section 544 claims

expired well before August 2004, when the Trustee assigned all the estate's rights and claims to

Titan in August 2004.  *Id.* at 230.

Finally, the ruling addressed the turnover claims under section 542, which gives trustees

authority to seek turnover of property to the estate when such property is "property of the estate."

Judge Dabrowski held that, because the MJCC properties were not ever the legal property of the

Flanagan bankruptcy estate, there was no basis under which the Trustee could have sought

turnover of those properties from MJCC.  "In other words . . . for the Properties themselves to

become 'property of the estate' the Trustee would first have to prevail on a declaratory cause of

action such as the Alter Ego Claim."  *Id.* at 230-31.

B.      Ruling on Applications for Prejudgment Remedies

In his ruling on the Applications for Prejudgment Remedies, Judge Dabrowski noted that

all of Titan's claims against MJCC were derivative of the Trustee's rights and that Titan could

only prevail on its claims if the *Trustee* would have prevailed at the time it assigned its rights to

Titan. *Flanagan I*, 348 B.R. at 87. Judge Dabrowski thus assessed the viability of Titan's claims

by analyzing whether the Trustee would have been able to pursue the same remedies. He

concluded that the Trustee would have been time-barred or prohibited under the *in pari delicto*

doctrine from pursuing the bankruptcy estate's interest in MJCC and/or its assets. Accordingly,

Titan, as assignee of the Trustee's rights and interests in MJCC, was also time-barred or

prohibited under the *in pari delicto* doctrine from pursuing an action against MJCC to retrieve its

assets and/or proceeds from the sale of those assets.

Judge Dabrowski held that Titan's reverse piercing claim, i.e., the alter ego claim, which

sought to render the assets of MJCC subject to the obligations of the equitable owner, Flanagan,

was time-barred because the Trustee had not pursued an action to bring MJCC and/or its assets

into the bankruptcy estate within one year of her appointment. *Id.* at 87-88. Judge Dabrowski

further held that, even if the Trustee had acted within the statute of limitations, the *in pari delicto*

doctrine would have prevented the Trustee from successfully recovering any of MJCC's assets.

*Id.* at 89. Therefore, because the Trustee would have been prevented from recovering the assets,

as assignee of its rights, Titan would have been similarly unsuccessful.

First, Judge Dabrowski held that the alter ego claim was one the Trustee could have

pursued under 11 U.S.C. § 544(a)(2)[1], which is in turn subject to 11 U.S.C. § 546(a)'s one-year

statute of limitations. *Id.* at 87. Judge Dabrowski concluded that section 544 applied to any

---

[1] Section 544(a)(2) gives bankruptcy trustees the same rights and powers to pursue
equitable actions as an unsatisfied execution creditor of the debtor outside the bankruptcy
context.

equitable action that hypothetical creditors of the debtor would possess and not, as Titan argued, just to transfer avoidance actions. *Id.* at 88. Judge Dabrowski explained that an unsatisfied creditor of Flanagan's could have pursued an alter ego claim against him to reach the MJCC assets and, thus, section 546(a)'s one-year statute of limitations applied. *Id.* Therefore, Judge Dabrowski held that, because the Trustee did not pursue an action to recover MJCC and/or its assets for the benefit of the estate within one year of her appointment, any claim arising out of the subsequent disposition of MJCC assets brought by Titan was also time-barred because Titan was the assignee of the estate's rights to those assets. *Id.*

In the alternative, even if the Trustee could pursue an alter ego claim pursuant to section 541, Judge Dabrowski held that the *in pari delicto* doctrine would have prevented the Trustee from recovering MJCC or its assets. *Id.* at 88-90. As Judge Dabrowski explained, section 541, which carries no statute of limitations, permits a bankruptcy trustee to pursue claims founded on the rights of the debtor. *Id.* at 88. In order for the Trustee to have a right to bring an alter ego claim under section 541, *Flanagan* must have been able to bring a claim to pierce his own veil. *Id.* at 88-89. Judge Dabrowski concluded that Connecticut law would not have permitted Flanagan to pierce his own veil to recover the MJCC assets on behalf of himself because MJCC was created as part of an unlawful venture to shield his assets from creditors. *Id.* at 89. Therefore, the *in pari delicto* doctrine, which prohibits wrongdoers from evading responsibility for their own corrupt bargains, would have prohibited Flanagan from recovering MJCC assets for himself and, therefore, the doctrine in turn also prevented the Trustee and Titan from recovering those assets under section 541. *Id.* at 89-90.

C.     Ruling on Motion for Contempt

Judge Dabrowski's short order denying the Trustee's motion for contempt stated that it was denied "in accordance with" his denial of Titan's application for prejudgment remedies. Carrying the logic of the ruling on the applications for prejudgment remedies through to the motion for contempt, if the assets could not have been brought into the estate under either section 541 or section 544, those properties were not subject to the automatic stay provision and MJCC could not be held in contempt for liquidating the North Haven Property without the Trustee's permission.

## IV.    Standard of Review

This court has jurisdiction to review final judgments, orders, and decrees of the bankruptcy court under 28 U.S.C. § 158(a)(1).  On appeal, a district court will review a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error.  Fed. R. Bankr. R. ("Bankruptcy Rule") 8013; *In re Stoltz,* 315 F.3d 80, 87 (2d Cir. 2002); *In re Northeastern Contracting Co.*, 233 B.R. 15, 18 (D. Conn. 1999).

When a party appeals a bankruptcy court's summary judgment order, however, the standard of review is *de novo*.  *In re T.R. Acquisition Corp.*, 309 B.R. 830, 835 (S.D.N.Y. 2003). Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord*

-12-

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim).  In short, if there is no genuine issue of material fact, summary judgment may enter.  *Celotex*, 477 U.S. at 323.

By granting MJCC's motion for summary judgment, the Bankruptcy Court concluded that, construing the evidence in the light most favorable to Titan, MJCC was entitled to judgment as a matter of law.  Consequently, there are no factual findings that are to be accorded deference because "'on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues of fact to be tried.'" *In re T.R. Acquisition Corp.*, 309 B.R. at 835 (quoting *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)).

## V.     Discussion

In seeking to overturn the Bankruptcy Court's entry of summary judgment for MJCC, Titan argues that: (1) there is no factual basis for Judge Dabrowski's finding that Flanagan created MJCC in order to evade creditors, or that it was done at a time that Flanagan was insolvent, about to become insolvent, or unable to pay his just debts; (2) in the absence of any facts suggesting that the creation of MJCC or its acquisition of the North Haven and Branford Properties was fraudulent, the *in pari delicto* doctrine is inapplicable; (3) the North Haven and Branford Properties were part of the bankruptcy estate at the time Flanagan filed his petition for Chapter 11 bankruptcy, meaning the properties remain the assets of the estate; and (4) the statute of limitations set forth in 11 U.S.C. § 546 is not applicable to Titan's claims against MJCC. Titan advances similar arguments in opposition to the Bankruptcy Court's order denying its applications for prejudgment remedies.

-13-

On appeal of the order denying her motion for contempt, the Trustee asserts that the MJCC Properties were covered under the automatic stay provisions of the Bankruptcy Code prohibiting the sale or transfer of property out of a debtor's estate because those assets were part of the estate at the time Flanagan filed for bankruptcy, regardless of whether he reported his interest in those assets or not.  Thus, the Trustee contends that MJCC and its assets have always been, and remain subject to, the automatic stay provisions that prohibit the transfer or sale or property out of the estate without her permission.  She, therefore, maintains that MJCC should be held in contempt for its willful violation of those provisions when it sold MJCC property without benefit to the estate.

For Titan's two appeals, the issue comes down to whether the Trustee had an actionable claim or interest in the MJCC properties at the time she transferred all the estate's rights and interest in those properties to Titan.  That issue is also a subsidiary concern for the Trustee's appeal, which relies on the argument that the MJCC properties were part of the estate at the time Flanagan filed his petition for bankruptcy in February 1999.

A.    Is there a Genuine Issue of Material Fact that MJCC Was Created by Flanagan to Evade His Creditors?

As a threshold issue, Titan takes exception to Judge Dabrowski's holding that there was no genuine issue of material fact that Flanagan fraudulently created MJCC in order to evade his creditors.  Specifically, Titan objects to paragraphs 3 and 4 of the Summary Judgment Ruling's Findings of Fact, which state:

> 3.    Flanagan prevented Cadle from satisfying its judgment by engaging in an evasive course of conduct designed to insulate his property from execution.

-14-

4.      Flanagan's evasive conduct included the creation and funding of MJCC, which purchased and/or held legal title to at least two parcels of Connecticut real property in which Flanagan arguably held equitable interests, namely (i) 230 Millbrook Road in the Town of North Haven (hereafter, [the "North Haven Property"]), and (ii) 25 Queach Road in the Town of Branford (hereafter, [the "Branford Property"]).

*Flanagan II*, 373 B.R. at 220.  Titan claims such findings were "pure supposition" because the

summary judgment record contains no evidence that Flanagan created MJCC to defeat creditors

or was done at a time when Flanagan was insolvent, was about to become insolvent, or was

unable to pay his just debts.

At summary judgment, when presented with evidence that supports a factual issue that it

disputes, it is not sufficient for Titan to merely rely on its own allegations to dispute that finding.

Rather, it must present significant probative evidence to establish a genuine issue of material

fact; the contradictory evidence must be sufficient to permit a reasonable fact-finder to find in

Titan's favor on that issue.  *Anderson*, 477 U.S. at 248.

A review of the record reveals the following undisputed facts regarding the creation of

MJCC, the purchase of the North Haven and Branford Properties, and Flanagan's reported debts

at the time of those purchases and transfers.  On or about July 18, 1994, Cimino-Burr and Rosen

signed a partnership agreement creating MJCC Realty Limited Partnership, giving Cimino-Burr

95% control and Rosen 5% control.  The partnership agreement designated Flanagan as MJCC's

agent who would be responsible for making the decisions affecting management, conduct, and

operation of the partnership's business and affairs.  The parties do not dispute that Flanagan had

no legal interest in MJCC.  On or about July 29, 1994, MJCC took title to the Branford Property

from William Nygard for $200,000.  On or about June 23, 1995, Cimino-Burr took title to the

North Haven Property for $146,000.  That same day Cimino-Burr quit-claimed her interests in

the North Haven Property to MJCC.  In its Local Rule 56(a)2 Statement, Titan admitted that

Flanagan funded both of those purchases.  *See also* 08/29/05 Tr., testimony of William Nygard,

at 237 (testifying that the money to purchase the Branford Property from him in 1994 came solely

from Flanagan); 08/30/05 Tr., testimony of Angela Cimino-Burr, at 91 (testifying that Flanagan

funded the purchase of the North Haven Property).  There is no dispute that Flanagan retained no

legal interest in MJCC or its properties.  Furthermore, there is no evidence that he hoped to retain

any benefit or interest in MJCC or its properties moving forward.

    The record also shows that Flanagan was heavily in debt at the time MJCC was created

and the property purchases were made.  On his Schedule F - Creditors Holding Unsecured

Nonpriority Claims, attached to his petition for Chapter 11 bankruptcy, Flanagan reported he had

incurred at least $634,000 in debt prior to 1994, which included a $65,000 deficiency judgment

and $103,500 in other judgments.  By April 3, 1995, Flanagan reported that he had incurred an

additional $1,773,000 in debt, including $1,720,000 in deficiency judgments.  Therefore, at the

time Flanagan funded the purchase of the North Haven Property in July 1995, Flanagan's

reported debt exceeded $2,407,000.

    There are only two factual scenarios that are consistent with these facts: either (1)

Flanagan made a gift to his mother-in-law and sister, whereby he retained no legal or equitable

rights in or interests to the property; or (2) he was engaged in a sham transaction to shelter assets

from his creditors.[2]  Only under the latter scenario would Flanagan retain an equitable interest in

---

[2] At the motion hearing held March 20, 2009, Titan raised a third alternative scenario:
that Flanagan was attempting to set up a trust.  It is Titan's burden, however, at summary
judgment to come forward with sufficient evidence from which a reasonable fact-finder could

MJCC and its properties.  Therefore, there is no genuine issue of material fact that, in order for Flanagan to have retained a colorable equitable interest in MJCC and its properties, he had to have been acting to defraud his creditors by putting properties that he actually controlled in MJCC's name.

      B.    <u>Titan's Claims</u>

There is no dispute that Titan's legal claims to MJCC and its properties arise solely from its August 2004 acquisition of the bankruptcy estate's rights and interests in MJCC.  Titan's claims against MJCC are premised on the legal conclusion that the MJCC properties and/or the proceeds from the sale of those properties are the rightful property of the bankruptcy estate, and in turn, of Titan, as assignee of the estate's rights and interests in MJCC.  In acquiring the estate's rights and interests, however, Titan acquired no more and no less than whatever rights and interests to MJCC and its properties the estate possessed at the time of the assignment. Therefore, in order to determine the extent of Titan's rights to MJCC and its properties, it is necessary to analyze the extent of the estate's rights and interests in MJCC.  Titan can only prevail on its claims if, and to the extent that, the Trustee would have prevailed on those claims at the time of the assignment.

      1.    *Claims Brought Pursuant to Bankruptcy Code Section 541(a)(1)*

As assignee of the Trustee's rights and interests in MJCC, Titan premises its claims against MJCC on the rights and interests that the Trustee had by way of the debtor.  In other

---

find that Flanagan intended to create a trust.  Titan has failed to present any evidence on this point.  In the absence of any evidence that suggests Flanagan was attempting to create a trust, a reasonable fact-finder could not make that finding without engaging in pure speculation, and, therefore, Titan cannot rely on this third alternative scenario to defeat summary judgment.

words, Titan asserts it has all the rights and interests in MJCC that the debtor had.

The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see also In re Flanagan*, 503 F.3d 171, 180 (2d Cir. 2007). Although those interests include causes of action belonging to the debtor, the bankruptcy estate's rights and claims are the same as the debtor's – no more, no less. *In re Hedged-Investments Assocs., Inc.*, 84 F.3d 1281, 1285 (10th Cir. 1996).

"Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded, *inter alia*, on the rights of the debtor and on certain rights of the debtor's creditors." *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989) (citing 11 U.S.C. §§ 541, 544, 547). State law determines what property interests the debtor held at the time the bankruptcy case commenced. *See Butner v. United States*, 440 U.S. 48, 54 (1979).

Titan does not dispute that Flanagan did not possess a legal interest in MJCC and its properties at the time he filed his petition for Chapter 11 bankruptcy in February 1999; Cimino-Burr controlled 95% of MJCC and Rosen controlled 5%. Titan's claims against MJCC are all based on the presumption that: (1) the debtor had an equitable interest in MJCC, and, (2) by virtue of that equitable interest, MJCC and its properties were simply part of the bankruptcy estate, and no further action was necessary to bring them into the estate.

That presumption, however, ignores the basic issue that, because he had no legal interest in MJCC or its properties, Flanagan would not have been able to simply claim ownership of MJCC and expect the law to immediately recognize him as the legal owner. Despite having fully funded the property purchases, legal title rested solely in MJCC, which in turn was legally controlled by Flanagan's mother-in-law and sister. If Flanagan had made a demand to his

-18-

mother-in-law for her to return the properties to him, she was legally entitled to refuse his request, thus forcing him to sue her in court and explain why his equitable interest in MJCC entitled him to MJCC and the Properties.

Flanagan's fraudulent transfer divested him of any legal claim to MJCC and its assets; in order to recover the properties, he would have been required to assert an equitable claim against MJCC. Therefore, so too must the estate. *Cf. In re Colonial Realty*, 980 F.2d 125, 130-32 (2d Cir. 1992) (holding that fraudulently transferred property "is not considered property of the estate until it is recovered") (quoting *In re Saunders*, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989)). Therefore, the bankruptcy estate's interests and rights to MJCC and its properties is directly related to Flanagan's ability to maintain a cause of action under Connecticut law to retrieve his interest in MJCC at the time he filed for bankruptcy. Similarly, a trustee's rights to assert an equitable claim on behalf of the estate are subject to the same defenses that the debtor would have been subject to. *In re Hedged-Investments Assocs.*, 84 F.3d at 1285.

a.    *The Veil Piercing Claim*

In the eleventh count of the Second Amended Complaint, Titan asserts a veil piercing claim, alleging that MJCC's title ownership should be disregarded and that its assets should be considered part of the bankruptcy estate. Assuming for purposes of this motion that trustees may pursue such "alter ego" claims on behalf of the estate, the Trustee could have pursued an alter ego/veil piercing claim only if Flanagan himself would have had a viable alter ego/veil piercing claim at the time he filed for bankruptcy.

Connecticut recognizes traditional veil piercing claims. "Courts will disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a

situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." *Angelo Tomasso, Inc. v. Amor Constr. & Paving, Inc.*, 187 Conn. 544, 552 (1982) (internal quotation omitted).  The Connecticut Supreme Court noted that it had "affirmed judgments disregarding the corporate entity" and imposed liability on individual shareholders "when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock."  *Id.* at 553.

Titan's claim, however, is better described as a "reverse piercing" claim.  Rather than seeking to pierce the veil of the legal entity in order to get to the assets of the controlling individual in order to satisfy the entity's liability, Titan seeks to pierce the veil of the separate legal entity, i.e., the partnership, in order to use its assets to satisfy claims against the controlling individual.   Connecticut courts have recognized "reverse piercing" as a viable cause of action. *See, e.g., Litchfield Asset Management Corp. v. Howell*, 70 Conn. App. 133, 149-51 (2002), *overruled on other grounds by Robinson v. Coughlin*, 266 Conn. 1, 9 (2003).

Assuming that Flanagan had an equitable claim in MJCC and its Properties by virtue of the sham transaction to shelter assets, he could have asserted a reverse piercing claim to obtain MJCC's assets on his own behalf.  He would have nevertheless faced a significant roadblock in his quest for equitable recovery: the *in pari delicto* doctrine.  "The common-law defense of *in pari delicto* derives from the Latin '*in pari delicto potior est conditio defendantis*'; in other words, 'where the wrong of the one party equals that of the other, the defendant is in the stronger position,' and a court will not 'administer a remedy.'" *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 158 (2d Cir. 2003) (quoting 34 Tex. Jur. 3d "Equity" § 31 (2002)).  Simply put, the court will leave the parties

where it finds them.

Connecticut courts have invoked this doctrine to bar recovery for parties engaged in illegal or corrupt bargains.  *See, e.g.*, *Greenberg v. Evening Post Ass'n*, 91 Conn. 371, 375 (1917) (noting *in pari delicto* would prevent a plaintiff from recovering his money back when he entered into a transaction for a fraudulent purpose); *Funk v. Gallivan*, 49 Conn. 124, 128 (1881) (noting *in pari delicto* doctrine dictates that the law "will not lend its aid to either of the parties to an immoral or illegal transaction, but will leave them as it finds them").  *See also Dowling v. Slotnik*, 244 Conn. 781, 807 (1998) (recognizing the long-standing equitable principle of *in pari delicto* as grounds for refusing to recognize the validity of a contract whose inherent purpose was to violate the law); *Cogswell v. Paige*, 2003 WL 21297606, at *4-5 (Conn. Super. Ct. 2003) (citing *Greenberg* and *Funk* for the proposition that Connecticut courts "will leave the parties where it finds them" when an illegal transaction is involved).  "[A]ctions brought on illegal or corrupt bargains . . . cannot prevail if the parties are *in pari delicto*. . . .  'The court does not want to touch an unlawful transaction with a ten-foot pole.  It always refuses to help carry it out, and it often refuses to pick up the pieces after the enterprise has fallen apart. . . .'" *Zappone v. Zappone*, 1993 WL 73674 at *5 (Conn. Super. Ct. 1993) (quoting Zechariah Chafee, Jr., *Coming Into Equity With Clean Hands*, 47 Mich. L. Rev. 877, 896 (1949)).

The undisputed facts show that Flanagan provided MJCC with the money to purchase both the North Haven and Branford Properties, without retaining any legal interest in them, but while still retaining functional control over the partnership and the properties.  Disregarding MJCC's separate legal entity in order to benefit him, as Flanagan would ask a court to do under a reverse piercing claim, would be tantamount to aiding a party engaged in an unlawful bargain.

-21-

The *in pari delicto* doctrine dictates that a court must "refuse[] its aid to undo what the parties have already done." *Funk*, 49 Conn. at 129.  Therefore, because a Connecticut court would not have stepped in to aid Flanagan in undoing his illegal bargain with MJCC, the Trustee, and its assignee, Titan, are similarly barred from recovering any interest in MJCC and its assets under a reverse piercing claim.

b.    *Constructive Trust & Unjust Enrichment Claims*

In the first and second counts, Titan seeks to impose a constructive trust on MJCC to receive the income and benefit from the North Haven and Branford Properties.  In the eighth and ninth counts, Titan alleges that MJCC benefitted by taking legal title to the properties and did not pay for that ownership interest and thus, it has been unjustly enriched.

As a threshold issue, these are not two separate causes of action.  Generally, a court will impose a constructive trust as the remedy where it finds that a party holding legal title to a property has been unjustly enriched; a count in a complaint seeking a constructive trust does not raise an independent substantive cause of action.  *See, e.g., Macomber v. Travelers Property and Cas. Corp.,* 261 Conn. 620, 623 n.3 (2002) (noting that a constructive trust is a remedy, not a substantive cause of action); *Guilietti v. Guilietti*, 65 Conn. App. 813, 856 (2001) ("[A] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.") (internal quotation omitted); *Banthin v. Shoreline Plumbing and Heating Supply Corp.,* 30 Conn. App. 637, 639 (1993) (noting that "imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment") (internal quotation omitted). Indeed, in the constructive trust counts, Titan states that a constructive trust is necessary because

-22-

"MJCC has been unjustly enriched to the detriment of the Plaintiff."  Second Amended

Complaint at ¶¶ 28, 37.  Because the need for a constructive trust only arises if the defendant is

found to have been unjustly enriched, I will address the unjust enrichment claims first.

"A right of recovery under the doctrine of unjust enrichment is essentially equitable, its

basis being that in a given situation it is contrary to equity and good conscience for one to retain a

benefit which has come to him at the expense of another."  *Providence Elec. Co. v. Sutton Place*,

*Inc.*, 161 Conn. 242, 246 (1971) (internal quotation omitted).  In determining whether a party has

been unjustly enriched at the expense of another, a court must examine the circumstances and

conduct of the parties and determine what would be "just and unjust, equitable or inequitable,

conscionable or unconscionable" under that set of circumstances.  *Id.*   "[I]n order to recover on

the basis of unjust enrichment, it is necessary for a plaintiff to demonstrate two aspects of the

transaction.  First, it must be shown that the defendant was benefited; that is, he has received

something of value.  And second, it must be shown that the benefit was unjust; that it was not

paid for by the defendant, to the detriment of the plaintiff."  *Id.*

Examining the set of circumstances surrounding the creation of MJCC and the purchase

of the North Haven and Branford Properties, the undisputed facts demonstrate that: Flanagan

funded the two purchases on behalf of MJCC, MJCC held legal title to those properties, Flanagan

retained no legal interest in MJCC, Flanagan's mother-in-law and sister were the controlling

partners of MJCC, and Flanagan was in a substantial amount of debt at the time these events

occurred.  As discussed above, either Flanagan was making a gift, which would not give rise to

any equitable interest, or he was acting to defraud his creditors by shielding assets.  Only under

the latter scenario would he have any claim that MJCC benefitted to his detriment by receiving

the Properties absent consideration.  His claim would fail on the merits, however, because he could not prove that the result was contrary to equity and good conscience because it was his intended arrangement.  Furthermore, the *in pari delicto* doctrine dictates that a court should leave the parties where it finds them and should not lend its aid to undo the illegal or fraudulent transaction that the parties expressly entered into.  Thus, because Flanagan would not have had a successful claim for unjust enrichment against MJCC, so too must the Trustee's claim fail, and so too must Titan's assigned unjust enrichment claim against MJCC.  Without a viable unjust enrichment claim, the claims seeking a constructive trust also fail.

c.     *Conversion Claims*

In the sixth and seventh counts, Titan asserts claims for conversion against MJCC, asserting that MJCC stole the North Haven and Branford Properties and has converted them to its own benefit at the expense of Titan.  Again, the viability of this claim rises and falls with the determination whether Flanagan would have been able to successfully assert a conversion claim against MJCC, on the basis of his equitable interest in MJCC, to recover title to the properties.

The Connecticut Supreme Court has "defined conversion as an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights.  It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm."  *Aetna Life & Cas. Co. v. Union Trust Co.*, 230 Conn. 779, 790-91 (1994).

Pursuing a conversion claim against MJCC would have required Flanagan to demonstrate

-24-

that MJCC had assumed control and power over property that was rightfully his.

Notwithstanding the fact that there is no evidence that MJCC acted inconsistently with

Flanagan's wishes by taking legal title to the North Haven and Branford Properties – the

undisputed facts demonstrate that Flanagan entered into the transactions to fund MJCC's

purchases willfully and voluntarily, expressly choosing not to take legal title – the *in pari delicto*

doctrine would once again bar relief for Flanagan.  As explained above, the undisputed facts

demonstrate that he was either making a gift or he was shielding assets in fraudulent manner.

Under either scenario, there is no evidence that MJCC's assumption and exercise of the right of

ownership over the North Haven and Branford Properties was "unauthorized" or done in a

manner that was adverse to his interests.  The undisputed evidence demonstrates that Flanagan

acted expressly to create this arrangement and, therefore, would not have had a viable conversion

claim to pursue against MJCC if he sought to redeem title to the Properties.  By making a gift,

Flanagan would not have retained any equitable interest; if he was engaged in an illicit

transaction to hide assets, thus giving rise to an equitable interest, the *in pari delicto* doctrine

would bar those claims.  Thus, the Trustee, standing in Flanagan's shoes under section 541(a)(1),

would also have no conversion claim, meaning Titan has no conversion claim.

d.    *Turnover Claims*

In the third and fourth counts, Titan seeks to have MJCC turn over legal title to the

properties and/or sales proceeds, including all income generated from MJCC's ownership of

those properties, pursuant to 11 U.S.C. § 542(a).

Titan cannot pursue a section 542(a) turnover claim under section 541(a)(1) because

turnover is not a cause of action available to debtors at the time they file for bankruptcy.  The

-25-

language of statute clearly demonstrates that it is a claim available only to trustees after a

bankruptcy petition has been filed.[3]  "In effect, § 542(a) grants to the estate a possessory interest

in certain property of the debtor that was not held by the debtor at the commencement of

reorganization proceedings."  *United States v. Whiting Pools*, 462 U.S. 198, 207 (1983).  As a

claim under section 541, however, both turnover claims must fail.

>        e.        *Summary of Section 541 Claims*

Given the nature of Flanagan's conduct surrounding the creation of MJCC and the

purchases of the two subject properties, section 541(a)(1) simply does not provide Titan a viable

route by which to pursue its claims against MJCC.

>        2.        *Claims Brought Pursuant to Section 544(a)*

Assuming for purposes of this decision that the Trustee may assign her rights and powers

arising under section 544, that section provides Titan's most logical route for pursuing its

assigned rights and interests against MJCC.  Often referred to as the trustee's "strong-arm

powers," section 544(a) provides a trustee with the certain rights and powers that hypothetical

creditors or bona fide purchasers would have against the debtor at the time the bankruptcy

petition is filed.[4]  *See* 5 Collier on Bankruptcy 544.02; *Pepsico*, 884 F.2d at 700.

---

[3] Section 542(a)(1) provides that:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a
> custodian, in possession, custody, or control, during the case, of property that the
> trustee may use, sell, or lease under section 363 of this title [11 USCS § 363], or that
> the debtor may exempt under section 522 of this title [11 USCS § 522], shall deliver
> to the trustee, and account for, such property or the value of such property, unless
> such property is of inconsequential value or benefit to the estate.

[4] Section 544(a) provides that:

Under section 544(a), Titan must demonstrate that its claims against MJCC are the types of claims that the Trustee, standing in the shoes of a hypothetical creditor, could have asserted.  It is not necessary to reach the issue whether Connecticut law would permit hypothetical creditors to bring the types of claims asserted by Titan, however, because the statute of limitations bars all of Titan's claims.

Crucially for Titan, 11 U.S.C. § 546(a)(1)(B) states that a trustee may not commence "[a]n action or proceeding under section 544" after, at the latest, "1 year after the appointment or election of the first trustee under section 702."  Mangan was appointed the Trustee of the Flanagan Chapter 7 bankruptcy estate on or about January 16, 2003.  Therefore, any claims she could have pursued under section 544 would have been time-barred by January 16, 2004, well before she assigned the estate's rights and claims to Titan in August 2004.  Thus, those

Trustee as lien creditor and as successor to certain creditors and purchasers

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

hypothetical creditor claims were stale by the time of the assignment, meaning that Titan is similarly time-barred from pursuing such claims as the Trustee's assignee.  Therefore, all its claims fail if brought pursuant to section 544.

Titan objects to the application of section 546's limitations period on the ground that, under section 541, the Trustee is empowered to pursue all the debtor's legal and equitable interests, regardless whether those interests have been listed on the bankruptcy petition.  As Titan argues, those claims are subject only to the state law statute of limitations, not section 544's limitations period.  This argument ignores the fact that claims brought pursuant to section 541 are legally distinct from claims brought pursuant to 544.  For claims brought pursuant to section 541, the Trustee is standing in the place of the debtor, so it makes sense that the Trustee would only be subject to the statute of limitations applicable to the state law claims.  For claims brought pursuant to section 544, however, the Trustee is standing in the place of a hypothetical creditor, asserting statutorily created rights and powers, and may assert those claims only within the limitations period prescribed by section 546.

Therefore, because the Trustee's rights and powers to assert claims that a hypothetical creditor may have held expired one year after her appointment and months before the assignment to Titan, Titan is time-barred from pursuing any of its claims under section 544.

3.    *Claims Brought Pursuant to Section 542*

Titan asserts its turnover claims under the powers vested in the Trustee by section 542. The difficulty that Titan faces in pursuing these claims, even assuming that a trustee may

effectively assign its turnover power,[5] is that section 542 only applies to "property of the estate." Despite conceding that MJCC and its properties were not the legal property of the estate, Titan nevertheless contends that Flanagan's equitable claims to MJCC and the Properties is sufficient to bring it and the Properties within the "property of the estate" and thus subject to section 542's turnover authority.

Section 542(a) is applicable to "property that the trustee may use, sell, or lease under section 363 of this title [11 USCS § 363]."  Section 363(b)(1) states in turn that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, *property of the estate*," subject to certain conditions. (emphasis added).  Therefore, only property of the estate is subject to section 542. *See In re Soboslai*, 263 B.R. 700, 702 (Bankr. D. Conn. 2001).

It is not disputed that Flanagan had an equitable interest in MJCC and its properties. Merely possessing an equitable interest in property does not render that property "part of the estate"; at best, the estate has a claim to that property.  Until a trustee exercises her authority under the Bankruptcy Code to assert the equitable claim to property, that property cannot be fairly considered property of the estate subject to the trustee's turnover authority.  Because the Trustee never successfully brought MJCC and its properties within the property of the estate,

---

[5] In support of its argument that the trustee's turnover power under section 542 may be assigned to a third-party, Titan cites *In re Valley Media, Inc.*, 2003 WL 21956410 (Bankr. D. Del. 2003).  In that case, the Bankruptcy Court held that, where a debtor or trustee is "effectively disqualified" from pursuing a section 542 turnover cause of action, the debtor or trustee can be considered "delinquent and the creditors committee should be authorized to pursue the cause of action." *Id.* at *2.  Notably, that case did not hold that trustees may assign their turnover power to a third party in all circumstances.  Nevertheless, because Titan's turnover claims fail as a matter of law, I need not reach the issue whether a trustee is authorized to assign her authority under section 542 absent a showing that she was "deliquent" in some respect.

section 542 is simply inapplicable and, thus, Titan's turnover claims must fail.

For the foregoing reasons, because all of Titan's claims fail as a matter of law, the Bankruptcy Court's order granting summary judgment for MJCC on all remaining counts is affirmed.

### 4.    *Titan's Application for Prejudgment Remedies*

Titan also appeals Judge Dabrowski's earlier ruling denying its application for prejudgment remedies.  Because Titan has no remaining viable claims against MJCC, its application for prejudgment remedies must fail as well.  Therefore, the Bankruptcy Court's order denying Titan's Applications for Prejudgment Remedies is affirmed.

### C.    The Trustee's Motion for Contempt

The Trustee asserts that MJCC and its Properties were part of the estate at the time Flanagan filed for bankruptcy, notwithstanding that he did not report those assets on his bankruptcy petition and that he did not have a legal interest in MJCC or its Properties.  As property of the estate, the Trustee contends that MJCC and its Properties have always been, and remain subject to, the automatic stay provisions that prohibit the transfer or sale of property out of the estate without her permission.  The Trustee therefore asserts that MJCC should be held in contempt for its willful violation of those provisions when it sold MJCC property without benefit to the estate.  The Trustee relies primarily on the argument that she never had to actively pursue an action to bring those Properties into the estate.

MJCC argues that: (1) that the Bankruptcy Court was procedurally barred from considering the Trustee's motion for contempt because she failed to initiate a separate adversary proceeding; (2) the Bankruptcy Court lost jurisdiction over the properties once the Trustee

assigned its interest in MJCC and its assets to Titan; and (3) even if the Bankruptcy Court did

retain jurisdiction, Judge Dabrowski was correct to conclude that the Trustee was time-barred

from pursuing MJCC and its assets because she did not initiate an action to retrieve those assets

within one year of her appointment.  For the reasons stated more fully below, the Bankruptcy

Court's denial of the Trustee's motion for contempt is affirmed.[6]

An automatic stay on all property of the debtor's estate arises as a matter of law at the

commencement of a bankruptcy suit.  11 U.S.C. § 362(a); *In re Parr Meadows Racing Ass'n,*

*Inc.*, 880 F.2d 1540, 1545 (2d Cir. 1989).  Section 362(a)(3) prohibits "any act to obtain

possession of property of the estate or of property from the estate or to exercise control over

property of the estate."  Violators are subject to actual damages, including costs and attorneys'

fees, and potentially punitive damages.  11 U.S.C. § 362(k)(1).  "The automatic stay operates to

protect debtors by giving them temporary relief from creditors and protects creditors as a whole

by avoiding a first-come first-served race to the debtor's assets."  *Kommanditselskab Supertrans*

*v. O.C.C. Shipping, Inc.*, 79 B.R. 534, 540 (S.D.N.Y. 1987).  The stay continues to remain in

place over all property of the estate until the case is closed, terminated, or the property is

abandoned either constructively or factually under 11 U.S.C. § 554.  *In re Pierson*, 33 B.R. 743,

744 (W.D.N.Y. 1983).

In order to receive the protection of the automatic stay provision and seek contempt

against its violators, however, the property at issue must be considered *part of the estate*.  The

bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of

---

[6] Because MJCC raises its procedural and jurisdictional arguments only as alternative
arguments in the event this court reverses the Bankruptcy Court's order denying the motion for
contempt, I need not reach those issues.

the commencement of the case.  11 U.S.C. § 541(a)(1); *In re Flanagan*, 503 F.3d 171, 180 (2d Cir. 2007).  As discussed above, the estate includes the debtor's causes of action, however, the estate's rights and interests are the same as debtors – the estate does not gain any right that the debtor did not have at the time the bankruptcy petition was filed, nor does it lose any right that the debtor possessed at that time.  *In re Hedged-Investments Assocs., Inc.*, 84 F.3d at 1285.

It is undisputed that Flanagan did not have a legal interest in MJCC or its Properties; at best, he had an equitable interest upon which he could have asserted a cause of action to reclaim his interest in MJCC and its Properties.  The Trustee has not cited any case law suggesting that an equitable interest in a property is sufficient to render that property part of the bankruptcy estate, subject to the automatic stay provisions, without any action needed on the part of the trustee to bring that property into the estate.  On the contrary, under Second Circuit case law, fraudulently conveyed property must be "recovered" before it is considered property of the estate. *See In re Colonial Realty*, 980 F.2d at 131.  Because MJCC and its Properties were not considered Flanagan's "property" at the time he commenced his bankruptcy suit, it was similarly not the "property" of the estate.

Notwithstanding his lack of legal interest in MJCC or its Properties, pursuant to section 541, the estate had Flanagan's equitable interests and his related equitable claims.  The Trustee was also endowed with the authority under section 544 to assert any claims a hypothetical creditor may have had in order to bring those Properties into the estate.  The key issue for purposes of the Trustee's appeal, however, is that she never commenced an action to bring those properties into the estate.  The Trustee's difficulty in seeking an order for contempt against MJCC for divesting the Properties without benefit to the estate are twofold: first, as discussed

above, the Trustee would have been unsuccessful at bringing the Properties into the estate under

section 541 due to the *in pari delicto* doctrine, and second, she would have been time-barred

from recovering the property using her strong arm powers under section 544.

Even giving the Trustee the benefit of the later date under section 546, the estate's right to

pursue the claims under section 544 expired in January 2004.[7]  The Trustee failed to commence

any action to bring the Properties into the estate prior to that time; therefore, the estate's claims

were stale when it assigned all its rights and interests to MJCC and the Properties to Titan in

August 2004.  Filing affidavits of fact stating that title to the Properties may be affected by the

Chapter 7 bankruptcy proceedings is not enough to bring those Properties into the bankruptcy

estate.  The statute requires an actual action or proceeding to recover those Properties.  Having

failed to undertake an actual proceeding under Connecticut law to convert the debtor's alleged

equitable interest in MJCC into property of the estate, the trustee cannot now claim that the

MJCC Properties are part of the estate.

The fundamental point is that the MJCC assets were not automatically considered part of

---

[7] Section 546(a) states in full:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--

(1) the later of--
      (A) 2 years after the entry of the order for relief; or

      (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

the bankruptcy estate under section 541, and they were never brought into the estate under section 544 within the requisite timeframe under section 546(a).  Therefore, MJCC and its assets are not subject to the automatic stay provision.  Because MJCC is not subject to the automatic stay provision, the estate has no basis for pursuing a motion for contempt against MJCC for selling off its assets without the Bankruptcy Court's or the estate's permission.  Therefore, the Bankruptcy Court's decision denying the motion for contempt is AFFIRMED.

**VI.    Conclusion**

For the foregoing reasons, the decisions of the Bankruptcy Court are AFFIRMED.  The clerk is directed to close these files.

It is so ordered.

Dated at Bridgeport, Connecticut, this 31st day of March 2009.


 /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge